**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KATHERINE EVANS,

Plaintiff,

- v -                                                         Civ. No. 8:13-CV-0447
                                                                              (RFT)

CAROLYN W. COLVIN, *Commissioner of Social Security*,

Defendant.

**APPEARANCES:**                          **OF COUNSEL:**

OFFICE OF MARK A. SCHNEIDER              MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION          ROBERT R. SCHRIVER, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u><strong>MEMORANDUM-DECISION and ORDER</strong></u>[1]

In this action, Plaintiff Katharine Evans moves, pursuant to 42 U.S.C. § 405(g), for review of

a decision by the Commissioner of Social Security denying her applications for Period of Disability

("POD") and Disability Insurance Benefits ("DIB").[2]  Based upon the following discussion, the

---

[1] On March 31, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter.  Dkt. No. 16.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 11 & 14.

Commissioner's decision denying Social Security benefits is **affirmed**.

## I. BACKGROUND

The Court adopts the facts set forth in Plaintiff's Brief under the heading "FACTS," with the exception of any legal arguments contained therein. Dkt. No. 11, Pl.'s Br., at pp. 1–15; Dkt. No. 14, Def.'s Br., at p. 2 (adopting Plaintiff's statement of the case and facts).

Evans, born on June 10, 1975, filed an application for POD and DIB on January 25, 2010, claiming an inability to work as of November 1, 2008, due to back injury, depression, osteopenia, chronic fatigue syndrome, attention deficit hyperactivity disorder, and migraines. Dkt. No. 7, Admin. Transcript [hereinafter "Tr."] at pp. 82, 123–30, 133, & 151. Evans's back injury began on March 16, 2008, when she fell off a horse. *Id*. at p. 221 & 229. She has five degrees and has past employment as a cytotechnologist.[3] *Id*. at pp. 152–53.

The disability applications were denied on initial review. *Id*. at pp. 83–86. On February 9, 2011, a Hearing was held before Administrative Law Judge ("ALJ") Arthur Patane wherein testimony was procured from Evans who was accompanied by counsel. *Id*. at pp. 47–81. On June 17, 2011, ALJ Patane issued an unfavorable decision finding that Evans was not disabled. *Id*. at pp. 28–46. On April 18, 2013, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1–6. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

---

[3] According to her application for benefits, amongst her degrees are a B.A. in Biology, B.S. in Arts and Sciences, and she graduated from the Albany College of Pharmacy Cytology program in 2004. Dkt. No. 7, Admin. Transcript [hereinafter "Tr."] at p. 152. She was also employed by the Vermont Air National Guard as emergency management for seven years. *Id*. at p. 153.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge ("ALJ") must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the

Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[4] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Patane's Findings

As noted above, Evans was the only witness to testify at the Hearing. Tr. at pp. 47–81. In addition to such testimony, the ALJ had Evans's medical records consisting of treatment reports and opinions from various treating and/or consulting examining physicians. *Id.* at pp. 219–635.

Initially, ALJ Patane noted that Evans met the insured status requirements of the Social Security

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

Act through December 31, 2015. Tr. at p. 33. Using the five-step disability evaluation, ALJ Patane found that: (1) Evans had not engaged in any substantial gainful activity since November 1, 2008, the alleged onset disability date; (2) she has severe medically determinable impairments, namely lumbar spine impairment and migraine headaches, but her other conditions, depression, osteopenia, chronic fatigue syndrome, and attention deficit hyperactivity disorder, were not severe; (3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) she retains the RFC to perform a full range of sedentary work, and could therefore return to her prior work as a cytotechnologist; and, alternatively, (5) considering her age, education, work experience, and RFC, and using the Medical-Vocational Guidelines, Evans could also perform work available in the national economy and was therefore not disabled. *Id.* at pp. 33–41.

### D. Plaintiff's Contentions

Generally, Plaintiff contends that she is disabled by virtue of the combination of her broken back, pain, migraine headaches, and mental illness and that the Commissioner rendered several errors necessitating a remand for either calculation of benefits or consideration of further evidence. *See generally* Pl.'s Br. More specifically, Evans claims that the Appeals Council erred when it refused to consider new evidence submitted to it on appeal and that the ALJ erred when he (1) violated the Treating Physician Rule by improperly evaluating the opinion of Physician's Assistant ("PA") Deborah Thompson, (2) erroneously assessed Evans's credibility, and (3) failed to obtain the testimony of a vocational expert ("VE"). Defendant contends that the Appeals Council appropriately declined to consider new evidence created and submitted after the date of the ALJ's decision and that the Commissioner's decision denying benefits is supported by substantial evidence in the record. Dkt. No. 14.

*1. New Evidence*

In her Brief, Plaintiff explains that certain evidence had been submitted to the Appeals Council for review, but was rejected and not made part of the official record; Plaintiff attaches that evidence to her Brief for the Court's review.  Dkt. No. 11-1.  It is Plaintiff's contention that this evidence, constitutes a retrospective assessment of her medical conditions and therefore should have been considered by the Appeals Council and made a part of the official record.  In her view, the Appeals Council's failure to consider this evidence was an error that requires a remand to the Social Security Administration for calculation of benefits or for "full consideration and analysis" of the new evidence. Pl.'s Br. at pp. 20-21.  Though it may be assumed, it is not entirely clear whether Plaintiff is additionally asking this Court to expand the record presently before this Court to include these documents; we will, however, proceed as if Plaintiff is making two parallel arguments regarding the Appeals Council's failure to consider the evidence and the Court's consideration of this evidence.

42 U.S.C. § 405(g) provides in pertinent part that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  (Emphasis added); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1998).  In accordance with this provision, the Second Circuit requires the Plaintiff to show that the proffered evidence is "(1) new and not merely cumulative of what is already in the record . . . (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . [and] (3) good cause [exists] for [claimant's] failure to present the evidence earlier."  *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 43 (internal

quotation marks and citations omitted).  New evidence is considered "'material' if it is both (1) relevant to the claimant's condition during the time period for which benefits were denied ***and*** (2) probative." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (quoting *Tirado v. Bowen*, 842 F.2d at 597) (internal quotation marks omitted) (emphasis added).  In addition, "[t]he concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."  *Id.* (quoting *Tirado v. Bowen*, 842 F.2d at 597) (alteration in original).

Plaintiff attaches the following evidence to her Brief:

(1) Independent Medical Exam Report, dated November 25, 2011, from Nancy E. Binter, M.D. FAANS CIME;

(2) Psychiatric Examination Report, dated December 13, 2011, from Daniela V. Gitlin, M.D.; and

(3) Disability Rating Decision, with accompanying correspondence, dated July 2012, from the Department of Veterans Affairs.

Dkt. No. 11-1.

First, the Court must address the relevant time period.  Plaintiff incorrectly states that the end date for the period in question is April 18, 2013, representing the date the Appeals Council denied review.  Pl.'s Br. at p. 18.  As pointed out by the Commissioner, the Regulations expressly provide that the "Appeals Council will consider . . . any new and material evidence submitted to it which relates to the period *on or before the date of the administrative law judge hearing decision*."  20 C.F.R. § 404.976(b) (emphasis added).  The pertinent Regulation goes on to state that if a claimant "submit[s] evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council *will return the additional evidence* . . . with an explanation as to why it did not accept the additional evidence[.]"  *Id.* (emphasis added).  Thus, <u>if</u> the evidence at issue

does not relate to the time period of November 1, 2008, the alleged onset disability date, through June 17, 2011, the date of the ALJ decision, then the Appeals Council properly returned the material without making it a part of the record.

The records proffered by Plaintiff are not treatment records from treating physicians, but rather, are medical opinions rendered by examining consultants as part of an independent medical examination related to claimant's "lawsuit"[5] and a Department of Veterans Affairs disability determination relative to her service with the Vermont Air National Guard. Dkt. No. 11-1. While it is true that the examining doctors reviewed Plaintiff's medical records, it also appears that they reviewed records that post-dated the ALJ's decision. Thus, the opinions rendered by these doctors are not necessarily for the time period at issue, but rather for the date when Plaintiff appeared before them. As such, this is not a situation, as Plaintiff proposes, wherein later medical reports serve as retrospective diagnosis or comment on the time period at issue. *See* Pl.'s Br. at p. 17 (citing various Second Circuit cases for the proposition that a "retrospective medical assessment of a patient may be probative upon the period in question").[6] Therefore, we cannot agree with Plaintiff's attorney that these opinions constitute a retrospective

---

[5] As these additional records reveal, Plaintiff's back injury began when she was thrown from a horse in March 2008. Two of the examinations included in these records were Independent Medical Examinations ("IME") performed at the request of Plaintiff's attorney, and there is reference to the fact that Plaintiff is also suing the stable for putting her on a horse that was inappropriately saddled and not suitable for student riders. *See* Dkt. No. 11-1 at p. 666. It is unclear whether these IMEs were conducted as a part of that lawsuit. *Id*. at pp. 648-71.

[6] The Court also notes that the cases cited by Plaintiff deal with situations where records/tests that postdate the ALJ's decision resulted in a diagnosis that bolstered the disability claimant's subjective symptoms. This is common in the case of fibromyalgia where "[t]here are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients." *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 44–45 (2d Cir. 1991). Accordingly, "the credibility of the claimant's testimony regarding [her] symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence," *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (internal quotation marks and citation omitted), and a diagnosis of fibromyalgia which post-dates an ALJ's disability decision is probative in that it serves to bolster the claimant's subjective symptoms. This case does not present a situation wherein Plaintiff's medical conditions or subjective complaints proffered during the relevant time period were bolstered in any way by the additional evidence which post-dates ALJ Patane's decision.

assessment of Plaintiff's condition during the relevant time period, nor can we see any reason why these one-time examining consulting doctor's opinions would be entitled to any greater weight than that afforded to the opinions already in the record which specifically pertain to the Plaintiff's condition during the relevant time period currently under consideration. Furthermore, we note that the Department of Veterans Affairs Disability Rating Decision is not binding upon the SSA since a determination of disability must be made pursuant to social security law, not the rules of another governmental agency. 20 C.F.R. § 404.1504 ("A decision by . . . any other governmental agency about whether [a claimant is] disabled . . . is based on its rules . . . . Therefore, a determination made by another agency that [a claimant is] disabled . . . is not binding on [the SSA].").

The Court acknowledges that the proffered evidence is new in the sense that it was created after the close of the relevant period for which the Appeals Council had denied review, thus satisfying the first prong of the Second Circuit's test. *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 43. And while good cause may exist for failing to previously provide the Veterans Affairs Disability Rating, since this was generated well after the ALJ's decision, it is not clear what good cause Plaintiff proffers for failing to provide the independent medical assessments from Drs. Binter and Gitlin. Nevertheless, Plaintiff has not satisfied the second prong for any of these new records in that Plaintiff fails to show how the proffered evidence is material to the Plaintiff's condition during the period at issue – November 1, 2008, the alleged onset disability date, through June 17, 2011, the date of the ALJ's decision.

Accordingly, to the extent Plaintiff seeks to expand the medical record, the Court declines such invitation because there is no showing that such records are material to the relevant time period. Similarly, we find no error committed by the Appeals Council in failing to expand the record to include

any of this proffered evidence.[7]

### 2. RFC, Treating Physician Rule, and Evans's Credibility

As noted above, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). When qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a).

In this case, ALJ Patane determined, after considering the record, that Plaintiff had the RFC "to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a)."[8] Tr. at p. 35. In rendering this assessment, the ALJ considered the opinion evidence as well as symptoms alleged by Plaintiff that could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*. at pp. 35-36.

---

[7] To the extent Plaintiff asserts that the Appeals Council failed to review and consider the proffered evidence, we note that in its decision, the Appeals Councils specified the medical evidence considered, which included the records attached to Plaintiff's Brief before this Court. Nevertheless, because the evidence related to a period outside the relevant time period, the records were returned to Plaintiff and she was advised of her right to re-apply for benefits if she felt she could establish disability after June 17, 2011. *See* Tr. at pp. 1-2.

[8] The Social Security Regulations define sedentary work as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 404.1567(a).

With regard to the opinion evidence, the ALJ considered the medical reports/assessments submitted by several examining and non-examining medical professionals, including: (1) Brett. T. Hartman, Psy. D., Examining Psychiatric Consultant (Tr. at pp. 342–47); (2) L. Hoffman, Agency Psychologist Review (Tr. at pp. 348–65); (3) Nader Wassef, M.D., Agency Orthopedic Examining Consultant (Tr. at pp. 368–73; (4) M. Martinez, Agency Non-Examining Physical RFC (Tr. at pp. 438–43); (5) C. Wakeley, M.D., Agency Medical Evaluator (Tr. at pp. 444–45); and (6) Deborah Thompson, P.A., Treating Physician Assistant (Tr. at pp. 620–34).

When assessing limitations posed by Plaintiff's mental conditions, the ALJ gave significant weight to Dr. Hartman's assessment that Plaintiff's mental impairments do not significantly limit her ability to meet the basic mental demands of work. Tr. at p. 39. And, because it was supported by the record, great weight was also accorded to PA Thompson's assessment that Plaintiff's symptoms were well controlled by medication. *Id*. at p. 38. Lastly, significant weight was given to Dr. Hoffman's opinion to the extent it was supported by Dr. Hartman and PA Thompson. *Id*. at p. 39.

In terms of physical limitations, the ALJ gave significant weight to Dr. Wakely's RFC assessment because it is consistent with the record, however, after considering all the evidence and the hearing testimony, the ALJ felt that Plaintiff had greater standing/walking limitations and lower lifting restrictions than that attributed by Dr. Wakely. *Id*. at p. 38. Little weight was given to PA Thompson's opinion regarding physical limitations because it lacked support in the record and seemed to be primarily reliant upon Plaintiff's subjective complaints, which the ALJ determined were not credible because such complaints were inconsistent with the medical record. *Id*. at pp. 38-39.

Plaintiff broadly challenges the ALJ's overall assessment of the opinion evidence. But the Court is confused as to what precisely is being disputed. It seems clear that Plaintiff objects to the

manner in which PA Thompson's assessment was handled by the ALJ, but there also seems to be a continuation of the argument as it pertains to the assessments by Drs. Gellis, Hartman, and Wassef. Yet the Plaintiff's Brief lacks any truly developed argument. It is particularly confusing in light of the fact that the ALJ gave significant weight to Dr. Hartman's opinion, and when discussing whether certain medical opinions were supported in the record, the ALJ specifically mentioned the examinations performed by Drs. Gellis and Wassef and relied upon those findings.[9] In light of the lack of clarity, the Court will only address Plaintiff's arguments regarding the ALJ's assessment of PA Thompson's functionality assessment.

### a. Treating Physician Rule

As noted above, the Plaintiff claims that the ALJ did not follow the Treating Physician Rule in assessing the opinion evidence. The Regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The Treating Physician Rule recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time

---

[9] Plaintiff's Attorney's complaint regarding the ALJ's failure to give more weight to the opinion rendered by Dr. Dr. Wassef is particularly perplexing to this Court in light of the countless times Attorney Schneider has, on behalf of other clients, urged the Court to repudiate Dr. Wassef's orthopedic opinion because of his *curriculum vitae* as a practicing pediatrician. *See, e.g., Bushey v. Colvin*, Civ. No. 8:11-CV-0031 (N.D.N.Y.); *Martin v. Astrue*, Civ. No. 8:11-CV-1431 (N.D.N.Y.). Similarly, while Attorney Schneider advocates here that Dr. Hartman's opinion should have been given more weight, we note that in a prior case submitted to the undersigned, Mr. Schneider attempted to discredit Dr. Hartman by providing the Court with a list of cases wherein Dr. Hartman's assessment was deemed to be inconsistent with the record; that argument was summarily rejected by the Court. *Bushey v. Colvin*, Civ. No. 8:11-CV-0031.

nonexamining, non-treating physician. 20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

If the treating physician's opinion is not given controlling weight, the weight to be afforded to the opinion is to be based on several factors, which include: (1) the length, nature and extent of the treatment relationship, including the frequency of examination; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the medical opinion with the medical record as a whole; (4) whether the treating physician is a specialist; and (5) any other relevant factors that tend to support or contradict the treating physician's opinion. 20 C.F.R. § 404.1527(c) (cited in *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998)).

Following the ALJ hearing, Plaintiff's Attorney submitted several records, including Medical Source Statements authored by PA Thompson.[10] Tr. at pp. 620-34. Plaintiff asserts that controlling weight should have been given to these medical opinions in light of the longstanding treatment relationship PA Thompson established with Evans. We presume Plaintiff is challenging the fact that the ALJ gave "little weight" to PA Thompson's opinion in terms of Evans's physical functioning. The Court first notes that only acceptable medical sources, as listed in the Regulations, can provide medical opinions to establish an impairment. 20 C.F.R. § 404.1513(a). A physician's assistant is not listed as an acceptable medical source; nevertheless, such opinion may be used "[i]n addition to evidence from the acceptable medical sources . . . to show the severity of [a claimant's] impairment(s)[.]" 20 C.F.R. § 404.1513(a) & (d)(1). Accordingly, the ALJ was under <u>no</u> obligation to afford controlling weight to the P.A.'s opinions. That being said, the Court recognizes that there are instances wherein a physician assistant's opinions can be considered controlling, especially in the North Country, where

---

[10] Counsel represented to ALJ Patane and the Social Security Administration that PA Thompson was a doctor. Tr. at pp. 618-20 & 635.

it has been recognized by the Second Circuit that there may be limited resources available to a patient and seeing a physician assistant on a more routine basis may be the only viable option. *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (noting that a nurse practitioners's opinion should have been given some consideration "particularly because [the nurse practitioner] was the only medical professional available to [plaintiff] for long stretches of time in the very rural 'North Country' of New York State"). For this reason, we find that the ALJ was correct to consider and weigh the opinions rendered by PA Thompson to determine whether such were consistent with the record.

On March 10, 2011, PA Thompson completed a Medical Source Statement regarding Evans's ability to do physical work-related activities. Tr. at pp. 623-30. Therein, Thompson opined that, without interruption Evans was limited to sitting/standing less than thirty minutes and limited to walking less than forty-five minutes. *Id*. at p. 625. Thompson, however, did not specify how many hours Evans could sustain any of those activities.[11] When prompted to "[i]dentify the particular medical or clinical findings" that would support her physical limitation assessment, PA Thompson stated:

- pain with palpation and motion in her lower back
- xrays done April 2008 show L2 compression fracture with 40% loss of height
- 2/09 had a single level instrumented fusion at L1-2, which unfortunately did not relieve her pain
- had multiple imaging studies since (xray, CT, MRI) that show no hardware failure

*Id*. at p. 625.

In assessing Evans's limited use of her hands, PA Thompson opined that Evans could occasionally reach with both hands, occasionally push/pull with her right hand, but never push/pull with her left

---

[11] This particular assessment is supposed to represent how long Evans could perform particular task (standing, sitting, walking) without interruption, and the assessor is supposed to provide how long throughout an eight-hour workday the claimant could accomplish those tasks. For example, typically, a medical provider will indicate that a claimant can sit for a maximum of thirty minutes at a time for six hours in an eight-hour workday.

hand; Evans ability to handle, finger, and feel with both hands was unlimited. *Id*. at p. 626. PA Thompson did not identify any medical or clinical findings to support these limitations. *Id*. With regard to using her feet to operate foot controls, PA Thompson limited Evans to only doing this activity occasionally based solely on her inability "to sit for any length of time." *Id*. In terms of postural activities, PA Thompson stated Evans could occasionally climb stairs and ramps, balance, and kneel, but could never climb ladders or scaffolds, stoop, crouch, or crawl. *Id*. at p. 627. In support of these medical assessments, Thompson simply stated that Evans "[h]as increased pain with bending/movement." *Id*.

Because Evans can only drive short distances due to pain, and because her headaches are worsened by exposure to humidity, temperature change, and fumes, Thompson assessed that Evans should only occasionally be exposed to such environmental conditions. *Id*. at p. 628. Thompson further opined that Evans could not travel without a companion, could not walk a block at a reasonable pace on rough or uneven surfaces, and could not use standard public transportation. *Id*. at p. 629. Evans could, however, perform activities like shopping, ambulate without an assistive device, climb a few steps at a reasonable pace using a single hand rail, prepare simple meals, feed herself, care for her personal hygiene, and sort/handle/use paper files. *Id*. Again, no medical findings were reported as support for these limitations.

Upon reviewing the ALJ's decision and the record provided to the Court, we find that the ALJ properly assessed the weight to be accorded to PA Thompson's assessment, especially in light of the absence of objective medical findings to support the limitations she attributed to Evans. As noted above, Plaintiff's medical conditions stem from injuries sustained when she was thrown from a horse in March 2008. Tr. at pp. 219-20. Spinal-fusion surgery was performed on February 18, 2009. *Id*. at

pp. 241-43. In July 2009, Plaintiff was referred to physical therapy for "lumbar stretching, strengthening, and overall conditioning." *Id*. at p. 484. Although that referral was for a six-month period, Plaintiff attended some physical therapy sessions in July, August, and September, with her last session occurring on September 8, 2009. *Id*. at p. 481; *see also id*. at pp. 60-61. On October 5, 2009, Dr. Gellis evaluated Plaintiff for pain management options. *Id*. at pp. 280-83. Dr. Gellis reviewed all images taken of the lumbar spine from March through August 2009 and noted there was no evidence of hardware failure, there was solid fusion, and no other specific abnormality. *Id*. at p. 281. Images taken on November 10, 2009, similarly showed no evidence of nonunion and that the hardware was intact. *Id*. at pp. 267-68. Dr. Gellis recommended that Evans pursue Mind-Body Medicine Clinic, consider acupuncture for pain management, and to follow up with her surgeon for reevaluation. *Id*. at. p. 282. On November 16, 2009, Plaintiff met with her surgeon, John Braun, M.D. She reported to him that she had excellent early relief of her pain following the surgery, but the pain returned in the summertime, especially after she had an accident while walking her large dog who pulled and twisted her causing pain. *Id*. at p. 272. Plaintiff further explained that the pain she experienced was different than her preoperative pain and that the preoperative pain had resolved. *Id*. Dr. Braun reviewed images taken earlier that week of Plaintiff's lumbar spine and noted "a very robust fusion. . . . [with] no evidence of loosening of the instrumentation, no evidence of complication and no other issues noted at this level." *Id*. He speculated that there may have been a small fracture at the base of her spinous process, which could explain some of the pain symptoms she had been experiencing in the last few months. Dr. Braun felt that the fracture would heal well and recommended that she receive injections from Dr. Gellis to alleviate the pain while the bone is healing. *Id*. The initial injection to the suspected fractured area provided some relief, but it did not last; Plaintiff was instead prescribed a TENS unit.

*Id.* at pp. 274 & 284. Plaintiff last treated with Dr. Gellis on January 29, 2010. *Id.* at pp. 274-84.

On April 5, 2010, Evans was seen by Air Force Physical Therapist Benjamin Hando. *Id.* at pp. 322-28. Upon physical examination of the thoracolumbar spine, PT Hando noted Evans had an average flexion of eleven, no range of motion for extension, right rotation, and bilateral and lateral flexion, and left rotation was an average four. *Id.* at p. 327. PT Hando also noted that Evans presented localized tenderness with an abnormal gait, but had no muscle spasms. *Id.* at pp. 327-28. PT Hando further noted that Evans exhibited six out of eight Waddell's Signs,[12] specifically, superficial tenderness, axial loading, pain on simulated rotation, regional weakness, overreaction, and nonanatomic tenderness. *Id.* at p. 328. Based on the testing conducted, PT Hando assessed a 70% disability. *Id.* at p. 327.

Upon examination seventeen days later by Dr. Wassef, SSA consulting orthopedic examiner, Evans exhibited full range of motion, with the exception of her ability to flex and extend forward, which was limited to 70°. *Id.* at pp. 370-71. Dr. Wassef observed a normal gait and station and noted that Evans did not appear to be in acute distress. *Id.* She could walk on her heels and toes without difficulty, used no assistive device, was able to rise from her chair without difficulty, and needed no help changing for the exam or getting on or off the exam table. *Id.* Squatting, however, was approximately one-third. *Id.* In examining the thoracic and lumbar spines, Dr. Wassef noted diffuse tenderness in the area where the fusion surgery had been performed, but there was no spinal or paraspinal tenderness and no muscle spasm. *Id.* at p. 371. Dr. Wassef assessed a fair prognosis. *Id.*

From February 2010 through December 2010, Plaintiff did not seek any treatment for her back. *Id.* at pp. 63-64. In September 2010, an MRI of her lumbar spine showed "no gross degenerative disc

---

[12] "Waddell's signs are indications that a patient's response to certain movements is inappropriate or unexpected, such as yelling out in pain in response to a very light touch." *Germain v. Astrue*, 2013 WL 587369, at *5 n.6 (N.D.N.Y. Feb. 12, 2013) (citation omitted).

change or new herniation. No malalignment or compression fractures are demonstrated." *Id*. at pp. 470-71. On December 20, 2010, treating neurologist Joseph Arguelles, M.D., reviewed Evans's medical history noted that she had not had very aggressive back rehabilitation. *Id*. at p. 609. Upon examination, Dr. Arguelles observed that Evans had no complaint of radicular pain, her station and gait were "grossly normal," motor strength and deep tendon reflexes were normal, sensation was grossly intact, and she had moderate lumbar tenderness. *Id*. at pp. 610-11. Dr. Arguelles also reviewed the lumbar MRI from September 2010 and noted a stable-appearing fusion at L-2, no evidence of neural impingement at that level, and remaining segments appeared "quite healthy" with "no evidence of significant disc degeneration [and] no neural compromise." *Id*. at p. 611. On January 13, 2011, upon reviewing flexion/extension films, Dr. Arguelles recommended an aggressive spine rehabilitation program. *Id*. at pp. 612-13.

After reviewing the evidence, the Court finds that the ALJ applied the correct legal principles when assessing the weight to be afforded to PA Thompson's physical assessment and substantial evidence supports his decision to give her functioning assessment little weight. Indeed, the objective medical evidence, as outlined above, simply does not support the limitations put forth by PA Thompson. Nor does she point to any evidence, beyond Evans's subjective complaints of pain, to support her functional limitations findings. While Plaintiff asserts that the ALJ should have recontacted PA Thompson, it is not entirely clear to this Court why the ALJ had any obligation to do so. Where, as here, there are no "obvious gaps" in the medical record, there is no onus on the ALJ to seek additional information from a medical source. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512). Here, the medical record was complete, and so the ALJ was under no obligation to recontact Ms. Thompson.

Based upon our review of the ALJ's decision, the medical record, and the parties' respective Briefs, we find no errors were committed by the ALJ in assessing Evans's RFC, and for all the reasons stated in the Defendant's Brief, we find that the ALJ's RFC assessment is indeed supported by substantial evidence. *See* Def.'s Br. at pp. 8-13.

### b. Plaintiff's Credibility

Plaintiff asserts that the ALJ improperly assessed her credibility in terms of her subjective complaints of pain. Under the Regulations, subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination. 20 C.F.R. § 404.1529(a) & (d). A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id.* at § 404.1529(c)(4). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* at § 404.1529(c). "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court

to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id*. at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

> (i)   [The claimant's] daily activities;
> (ii)  The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv)  The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
> (v)   Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
> (vi)  Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In his decision, the ALJ found that Evans's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the record of medical evidence." Tr. at p. 36. Specifically, in terms of Plaintiff's back pain, the ALJ noted that the medical evidence suggested that Plaintiff's surgery was a success and "subsequent testing and medical imaging do not support the severity of the claimant's allegations." *Id*. at p. 36. The ALJ pointed to other inconsistencies in the record, such as the restricted range of motion Plaintiff exhibited to the VA examiner, which contrasted the full range of motion exhibited to the SSA consultive examiner just seventeen days later. And the ALJ took note of the fact that the VA examiner documented six of eight possible Waddell signs. *Id*. at pp. 37-38. Further credibility questions arose when Plaintiff made inconsistent statements regarding her headaches wherein she

reported in a statement to the SSA that she experiences headaches once or twice per week, up to five to six times per month, yet, elsewhere in the medical records were statements made by Plaintiff to various doctors indicating that her headaches typically occurred with her menses and usually only once per month. *Id*. at p. 38 (citing Tr. at pp. 166, 319, 287, & 369).

The Court finds that the medical evidence supports the ALJ's credibility finding as it does not, on the whole, corroborate Plaintiff's subjective symptomatology to the extent alleged. In light of the objective medical evidence, consulting examinations, and course of treatment, further buttresses the ALJ's assessment of her credibility. And, because PA Thompson based her functional assessment largely on Plaintiff's subjective complaints of pain, the Court finds that the ALJ properly discredited that assessment. For all these reasons, we find that the ALJ did not erroneously apply the legal standards, and his findings on Plaintiff's credibility are supported by substantial evidence.

### 3. Step Five

At Step Four, the ALJ determined that based upon her RFC, Evans could return to her past work as a cytotechnologist. Tr. at p. 39. Alternatively, the ALJ proceeded to Step Five and, relying upon the Medical-Vocational Guidelines ("the Grids"), he determined that Evans could perform other jobs that exist in significant numbers in the national economy. *Id*. at p. 40. Plaintiff asserts that the ALJ's reliance on the Grids and failure to call a vocational expert was an error in light of her significant non-exertional limitations.

Ordinarily, if a claimant suffers solely from exertional impairments, the Commissioner meets her burden at the fifth step by resorting to the Grids. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); 20 C.F.R. § 404.1569. The Grids place claimants with severe exertional impairments who can no longer perform past relevant work into categories

according to their RFC, age, education, and work experience (*i.e.*, skilled or unskilled as well as transferability of skills).  20 C.F.R. Pt. 404, Subpt. P, App. 2; *see also Clark v. Barnhart*, 2003 WL 221397777, at *4-5 (E.D.N.Y. Sept. 16, 2003).  Based on these factors, the Grids are dispositive on whether the claimant is disabled or not disabled and proper application thereto will obviate the need for any vocational testing.  *Rosa v. Callahan*, 163 F.3d  at 82 ("For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled.").

Exclusive use of the Grids, however, is "inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations," i.e., a combination of exertional and non-exertional limitations.  20 C.F.R. § 404.1569a(d).  "[W]hen significant nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity."  *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 127 (D. Conn. 2002) (citing *Bapp v. Bowen,* 802 F.2d at 605).  "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  *Bapp v. Bowen*, 802 F.2d at 603.  Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations" such significant diminishment renders sole reliance on the grids is inappropriate.  *Id*. at 605-06.  "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'"  *Id*. at 606 (quoted in *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).[13]

---

[13] The Second Circuit arrived at this standard in reliance on sister circuit case law as well as the report accompanying the promulgation of the grids.  *See Bapp v. Bowen*, 802 F.2d at 605-06.  The promulgation report made clear that nonexertional limitations may have the effect of excluding certain jobs within a particular category, however, in some (continued...)

Exertional limitations are strength limitations, which include the ability to sit, stand, walk, carry, push, and pull. 20 C.F.R. §§ 404.1569a(a)–(b) & 416.969a(a)–(b); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 n.3 (S.D.N.Y. 1996). Non-exertional limitations imposed by impairments affect one's ability to meet requirements of jobs, other than strength demands including, "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(1)(vi) & 416.969a(c)(1)(vi); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y.1997).

In the instant case, the ALJ found that Evans could perform the full range of sedentary work, and considering her age, education, and work experience, a finding of "not disabled" was directed by the Grids. Tr. at p. 40. This Court agrees with the Commissioner that because the RFC did not include any non-exertional impairments, there was no error in the ALJ's decision not to call a VE. Thus, we find that the sole reliance on the Grids as an alternative finding of non-disability at Step Five was appropriate.

### III. CONCLUSION

To the extent not addressed specifically, the Court has considered all of Plaintiff's arguments, even those not fully developed. Based upon consideration of the Administrative Record and the discussion above, we find that in assessing Evans's disability application, the ALJ applied the correct legals standards and his findings are supported by substantial evidence.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits is **AFFIRMED**; and

---

[13](...continued)
cases, such exclusions are negligible in that a wide range of jobs exist within the functional level especially in light of the fact that an individual "need not be able to perform each and every job in a given range of work." *Id*. at 606 (quoting 43 FED. REG. 55,349-55,361).

it is further

       **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order

upon the parties to this action.

Date:   August 10, 2015
         Albany, New York

Randolph F. Treece
U.S. Magistrate Judge